# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# AIKEN DIVISION

| | |
|---|---|
| MCI Communication Services, Inc., | Civil Action No.: 1:17-cv-01460-JMC |
| Plaintiff, | |
| v. | **ORDER AND OPINION** |
| Ertel Construction, Inc., | |
| Defendant. | |

Plaintiff MCI Communication Services, Inc. filed this action against Defendant Ertel Construction, Inc. seeking to recover damages resulting from Defendant's alleged negligent conduct that resulted in the severance of Plaintiff's underground fiber-optic cable in or near Fairfax, South Carolina. (ECF No. 1 at 2 ¶¶ 6–10.)

This matter is before the court on Defendant's Motion for Partial Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 58.) Specifically, Defendant asserts it is entitled to summary judgment as to Plaintiff's claim for loss of use damages. (*Id.* at 1.) Plaintiff opposes Defendant's Motion in its entirety. (ECF No. 60 at 27.) For the reasons set forth below, the court **DENIES** Defendant's Motion for Partial Summary Judgment as to Plaintiff's loss of use damages.

## I.   RELEVANT BACKGROUND TO PENDING MOTION

Plaintiff "is a telecommunications company which provides interstate telecommunications services to individual and commercial users." (ECF No. 1 at 2 ¶ 5.) Plaintiff alleges that it provides telecommunications services through "a nationwide network of fiber-optic cable which is buried underground."[1] (*Id.*) Plaintiff further alleges that it "installed, maintains, and operates a fiber-

---
[1] "A fiber-optic cable is essentially a 'pipeline' that carries telecommunications traffic between various points in a telecommunications carrier's network known as terminals." (ECF No. 60-1 at

optic cable in or near Fairfax, Allendale County, South Carolina (the "Cable")." (*Id.* ¶ 6.) More specifically, Plaintiff asserts that the Cable serviced its customers between Columbia, South Carolina and Savannah, Georgia and actively carries data amounting to 4,416 DS-3s.[2] (ECF No. 60-1 at 6 ¶¶ 24, 28.)

Defendant is a utility construction company that specializes in "installation of electric, natural gas and broadband fiber-optic services." *About Ertel*, http://www.ertelconst.com/about (last visited Oct. 24, 2019). In June of 2014, Defendant was performing utility work in Fairfax, South Carolina on behalf of South Carolina Electric and Gas. (ECF No. 58-1 at 1.)

On June 5, 2014, Plaintiff alleges that while performing excavation work with a mechanical auger for the purpose of installing utility poles, "Defendant severed an MCI underground fiber-optic telecommunications cable" at a location "approximately 2,600 feet north of the intersection of CSX railroad tracks and Walker Road in or near Fairfax . . . ." (ECF No. 60 at 1.) When the Cable was severed, Plaintiff was able to reroute some, but not all of the relevant telecommunications traffic to spare restoration capacity—which Plaintiff maintains for emergencies. (ECF No. 60-1 at 7 ¶¶ 33–34, 8 ¶ 41.) As a result of the aforementioned Cable severance, Plaintiff asserts that it suffered damages to include the costs of repairing the Cable and the loss of its use for 8.15 hours. (ECF No. 60 at 2–3.) For its loss of use damages, Plaintiff seeks to recover $887,013.40. (*See* ECF No. 60-1 at 14 ¶ 65.)

Thereafter, Plaintiff filed an action in this court on June 5, 2017, alleging a claim against Defendant for negligence. (ECF No. 1 at 2 ¶ 10–5 ¶ 14.) In the Complaint, Plaintiff specifically

---

5 ¶ 14.) "A fiber-optic cable consists of individual strands of glass or 'fibers' which are connected to electronic equipment in the terminals." (*Id.* ¶ 15.) "The electronic equipment transmits the telecommunications traffic in the form of optical signals, or light, between terminals." (*Id.*)
[2] A DS-3 is the unit of measurement for the capacity of a fiber-optic cable. (ECF No. 60-1 at 5 ¶ 19.) "One DS-3 is the equivalent of 672 individual phone calls." (*Id.* ¶ 20.)

2

pleaded that "[a]s a result of [Defendant] Ertel's actions and/or omissions, [Plaintiff] MCI has sustained damage to and loss of use of its Cable, . . . ." (*Id.* at 4 ¶ 11.) Defendant answered the Complaint on July 18, 2017, denying its allegations. (ECF No. 10.) On September 15, 2019, Defendant filed the instant Motion for Partial Summary Judgment. (ECF No. 58.) Plaintiff filed opposition to the Motion for Partial Summary Judgment on September 30, 2019, to which Defendant filed a Reply in Support of Defendant's Motion for Partial Summary Judgment on October 14, 2019. (ECF Nos. 60, 65.)

On October 28, 2019, the court heard arguments from the parties in support of their respective positions. (ECF No. 68.) The court considers the merits of Defendant's Motion and Plaintiff's opposition to said Motion below.

## II. JURISDICTION

The court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. For jurisdictional purposes, Plaintiff alleges that it is a Delaware corporation with its principal place of business in Basking Ridge, New Jersey. (ECF No. 1 at 1 ¶ 1.) Defendant is admittedly a corporation organized under the laws of the State of North Carolina. (ECF No. 10 at 1 ¶ 3.) The court is satisfied that the amount in controversy exceeds $75,000.00, exclusive of interest and costs. (ECF No. 1 at 5.)

## III. LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248–49 (1986).

A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the nonmoving party. *Newport News Holdings Corp. v. Virtual City Vision*, 650 F.3d 423, 434 (4th Cir. 2011). In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). The non-moving party may not oppose a motion for summary judgment with mere allegations or denial of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Shealy v. Winston*, 929 F.2d 1009, 1012 (4th Cir. 1991). All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249.

## IV. ANALYSIS

A. <u>The Parties' Arguments</u>

In its Motion, Defendant argues that (1) "under prevailing South Carolina law, Plaintiff cannot recover for any alleged loss of use of its damaged cable"[3] and (2) even [i]f loss of use damages are appropriate at all, . . . they should be calculated based on [] Plaintiff's lost profits due to the absence of the redundant capacity, or the diminution in value of its property." (ECF No. 58-1 at 6, 7.) In support of this argument, Defendant asserts that South Carolina courts "in analyzing loss of use damages and rental value, have only applied the assessment to automobiles or other modes of vehicular transportation." (*Id.* at 5.) Defendant further asserts that "[r]ental value [] is

---

[3] The court observes that at the October 28, 2019 motion hearing, counsel for Defendant appeared to withdraw this position by stating in response to a question by the court that Defendant only opposes the amount of loss of use damages sought by Plaintiff and its calculation to reach that amount.

not a proper measure of damages where the property is not capable of [being] rented and/or does not have rental value." (*Id.* at 6 (citing *Hyler v. Wheeler*, 126 S.E.2d 173, 175 (S.C. 1962)). As a result of the foregoing, Defendant argues that it is entitled to summary judgment as to Plaintiff's claim for loss of use damages because: (1) it did not lease "additional capacity from another telecommunications carrier for the 8.15 hours that it took to repair the cable at issue in this case"; (2) "Plaintiff did not need to do so as most of the Plaintiff's services had built-in redundant capacity"; (3) the rental market for leasing "substitute capacity does not actually exist, at least for the 8.15 hours of time needed to repair the cable at issue in this case"; and (4) Plaintiff did not "actually incur any of the alleged $887,013.40 it is claiming in loss of use damages." (*Id.* at 6, 7.) However, as a fallback position, Defendant contends that "[i]f loss of use damages are appropriate at all," the court should not use Plaintiff's proposed calculation for damages, but should calculate loss of use damages "based on the Plaintiff's lost profits due to the absence of the redundant capacity, or the diminution in value of its property." (*Id.* at 7 (citing *Peoples Fed. Sav. & Loan Ass'n of S.C. v. Res. Planning Corp.*, 596 S.E.2d 51 (S.C. 2004)).)

Plaintiff opposes summary judgment on its claim for loss of use damages. Plaintiff argues that under South Carolina law an owner of property "may recover damages for the loss of use of that property" in instances "[w]here personal property is injured but not destroyed by the negligent act of another." (ECF No. 60 at 13 (citing generally *Laney Tank Lines, Inc. v. United States*, 237 F. Supp. 205 (E.D.S.C. 1965); *Newman v. Brown*, 90 S.E.2d 649 (S.C. 1955); *Scott v. Southern Ry. Co.*, 97 S.E.2d 73 (S.C. 1957); *Hutson v. Cummins Carolinas, Inc.*, 314 S.E.2d 19 (S.C. Ct. App. 1984)).) Therefore, because it owned the Cable that Defendant severed on June 5, 2014, Plaintiff argues that it "may recover the reasonable costs of restoring the Cable to its condition immediately prior to the incident, together with loss of use during the period of the repairs." (*Id.*

5

at 15 (citing *Newman*, 90 S.E.2d at 653; *Coleman v. Levkoff*, 122 S.E. 875, 875 (S.C. 1924)).) Plaintiff further argues that it "is entitled to recover for loss of use of the Cable regardless of whether it actually procures a replacement or proffers evidence that it also incurred lost profits, lost revenues, lost business, or any other pecuniary out-of-pocket loss occasioned by the loss of the use of the Cable." (*Id.* (citing *Newman*, 90 S.E.2d at 653; *Coleman*, 122 S.E. at 875; *Laney Tank Lines*, 237 F. Supp. at 207).) Moreover, as to the proper measure of damages, Plaintiff asserts that the South Carolina Supreme Court has expressly allowed a party to recover "the reasonable rental value of comparable property or the expense of hiring a substitute for the time during which the use of the property was deprived." (*Id.* at 13 (citing *Coleman*, 122 S.E. at 875; *Scott*, 97 S.E.2d at 76; *Barnett v. Charleston & W. Carolina Ry. Co.*, 96 S.E.2d 555 (S.C. 1957)).) In this regard, Plaintiff "elected to quantify its damages for the loss of the use of the Cable by the cost of procuring substitute capacity on another carrier's cables to replace the capacity of the transport systems that were active, carrying traffic, and impacted by Defendant's severance of the Cable." (*Id.* at 23.)

B.  The Court's Review

To resolve the parties' dispute in this matter, the court must determine whether under South Carolina law "a telecommunications service provider whose cable is severed [can] recover loss-of-use damages measured by the rental value of substitute cable when it has not rented such cable or otherwise incurred any monetary loss apart from the cost of repair?" *See MCI Commc'ns Servs. v. CMES, Inc.*, 728 S.E.2d 649, 651 (Ga. 2012) (quoting *MCI Communc'ns Servs. v. CMES*, 669 F.3d 1313, 1314 (11th Cir. 2012)). At the outset, the court observes that neither Plaintiff nor Defendant has cited, and the court has not located, a South Carolina appellate court case addressing this precise issue regarding loss of use of a telecommunications cable.[4] "Thus, as a federal court

---

[4] Additionally, neither Plaintiff nor Defendant has requested certification of this issue to the South Carolina Supreme Court.

sitting in diversity, the [c]ourt must predict how the South Carolina Supreme Court would decide the issue." *Allstate Ins. Co. v. Electrolux Home Prods., Inc.*, C/A No.: 4:16-cv-03666-RBH, 2017 WL 2216298, at *5 (D.S.C. May 19, 2017) (citing *Private Mortg. Inv. Servs., Inc. v. Hotel & Club Assocs., Inc.*, 296 F.3d 308, 312 (4th Cir. 2002) ("As a federal court sitting in diversity, we have an obligation to apply the jurisprudence of South Carolina's highest court, the South Carolina Supreme Court. But in a situation where the South Carolina Supreme Court has spoken neither directly nor indirectly on the particular issue before us, we are called upon to predict how that court would rule if presented with the issue." (internal footnote and citations omitted))). "In predicting a ruling by the South Carolina Supreme Court, [the Court] may also consider, inter alia: restatements of the law, treatises, and well considered dicta," *id.*, "as well as the practices of other states." *Id.* (quoting *St. Paul Fire & Marine Ins. Co. v. Am. Int'l Specialty Lines Ins. Co.*, 365 F.3d 263, 272 (4th Cir. 2004) (internal quotation marks omitted)).

Under South Carolina law, "[g]enerally, the measure of damages in a tort case is 'the amount needed to compensate the plaintiff for the losses proximately caused by the defendant's wrong so that the plaintiff will be in the same position he would have been in if there had been no wrongful injury." *Turpin v. Lowther*, 745 S.E.2d 397, 403 (S.C. Ct. App. 2013) (quoting *Austin v. Specialty Transp. Servs., Inc.*, 594 S.E.2d 867, 874 (S.C. Ct. App. 2004); *see also Clark v. Cantrell*, 529 S.E.2d 528, 533 (S.C. 2000) ( "The goal [of compensatory damages] is to restore the injured party . . . to the same position he or she was in before the wrongful injury occurred."). "Recovery for loss of use is grounded on the principle that when one has been deprived of possession of the property, he has lost a valuable right in the property, *i.e.*, the right to use it." *Isaac v. Gene's Used Cars*, 372 S.E.2d 102, 104 (S.C. Ct. App. 1988) (citing generally *J.A. Tobin Constr. Co. v. Holtzman*, 485 P.2d 1276 (Kan. 1971)). After considering the aforementioned

caselaw, the court is confident that the South Carolina Supreme Court would conclude that Plaintiff, even as a telecommunications service provider, is eligible to recover loss of use damages for the downtime it experienced when Defendant severed Plaintiff's fiber-optic cable, which conclusion Defendant appeared to concede at the October 28, 2019 motion hearing.[5]

However, the question of whether rental value is the appropriate measure of damages is less clear.[6] South Carolina law does generally allow a plaintiff to calculate loss of use damages based on the rental value of replacement property. *See Hyler*, 126 S.E.2d at 175 ("An accepted measure of the value of the use of specific property capable of being rented is its rental value."); *Standard Supply Co. v. Carter & Harris*, 62 S.E. 150, 151 (S.C. 1908) ("The general rule, well supported by authority and the fairest that could be adopted, is that damages for the wrongful

---

[5] In reaching this conclusion, the court found relevant to its analysis in this case the following observation by the United States District Court for the Western District of Oklahoma:

> Telecommunications-specific cases from other jurisdictions agree with the availability of loss-of-use damages as well. Summarizing prior cases, the U.S. District Court for the Western District of Kentucky recently explained that loss-of-use damages for a severed cable generally are available when "the plaintiff used its redundant capacity for emergencies only, but not in its general business," and such loss-of-use damages are not available "where the plaintiff used its redundant capacity in the ordinary course of business and did not reserve it expressly for emergencies." *Level 3 Commc'ns, LLC v. TNT Constr., Inc.*, 220 F. Supp. 3d 812, 818-19 (W.D. Ky. 2016) (collecting cases). In this case, Plaintiff submitted evidence that the excess cable to which traffic was rerouted was "reserve[d] for use in emergencies." Resp. 9, Doc. No. 29; *see also id.* at 11. Defendant has not submitted any evidence otherwise. *Contra MCI WorldCom Network Servs., Inc. v. OSP Consultants, Inc.*, 585 S.E.2d 540, 544 (Va. 2003) (disallowing loss-of-use damages when, different from the evidence in the instant case, evidence showed that the telecommunications company "maintain[ed] excess network capacity primarily for the general use of its business so that it c[ould] accommodate varying levels of telecommunications traffic" and "d[id] not reserve particular cables for use exclusively in emergencies").

*MCI Communc'ns Servs. v. Sadler Boring, LLC*, Case No. CIV-18-231-SLP, 2019 WL 2897490, at *4 (W.D. Okla. Apr. 25, 2019).

[6] The court observes that South Carolina appellate courts have not spoken on the issue regarding the measure of damages in the context of a severed telecommunications cable.

deprivation of the use of specific property are to be measured by its rental value.") (citations omitted). Further, in South Carolina, a plaintiff is arguably allowed to offer evidence of rental value even if neither it nor its agent did not actually procure the rental replacement. *See Scott*, 97 S.E.2d at 76 ("[T]here is no merit in the contention that the rental value of the car used was not a proper element of damages because it was furnished gratis by a party other than appellants."). However, "damages for the temporary deprivation of specific property of another, . . . cannot be restricted to its rental value, where from any cause it has no rental value." *Id.* In such cases the damages must necessarily be ascertained by an inquiry into the value of the use of the property to the injured party for the time he was deprived of it." *Id.*

Upon its review of the foregoing in the context of the parties' arguments, the court is constrained to conclude that "Plaintiff's proposed measure of damages—calculated based on rental of an alternative cable—is acceptable" under South Carolina law. *See MCI Communc'ns Servs. v. Sadler Boring, LLC*, Case No. CIV-18-231-SLP, 2019 WL 2897490, at *4 (W.D. Okla. Apr. 25, 2019). *But see Level 3 Commc'ns, LLC v. TNT Constr., Inc.*, 220 F. Supp. 3d 812, (W.D. Ky. 2016) ("[T]he majority of courts from other jurisdictions addressing this issue in nearly identical lawsuits brought by telecommunications companies against contractors have held that measuring loss-of-use damages by a theoretical rental value is inappropriate. In light of these circumstances, Level 3's proposed measure of damages offends general principles of damages law." (internal citation omitted)); *CMES, Inc.*, 728 S.E.2d at 652 ("An injury to a person or damage to property is required for a tort to be actionable, and MCI did not expend any money to keep its system running, nor did it suffer any lost profits, and thus it has failed to show damage qualifying as loss of use that would require compensation."). In other words, the court predicts that the South Carolina Supreme Court would not preclude a plaintiff from arguing to the trier of fact that the

amount of its loss of use damages should be the cost of renting capacity from another telecommunications carrier.⁷ To this end, the court observes that Defendant's arguments attacking the $887,013.40 amount requested by Plaintiff "relate to the weight of the evidence and disputed factual issues, not to legal issues appropriate for summary judgment." *Sadler Boring*, 2019 WL 2897490, at *4 (citations omitted). Therefore, the court finds that Plaintiff's loss of use damages and its rental value method for calculating its loss of use damages are proper issues for jury consideration in this matter.⁸

## V. CONCLUSION

Upon careful consideration of the entire record, the court hereby **DENIES** the Motion for Summary Judgment of Defendant Ertel Construction, Inc. as to Plaintiff's loss of use damages. (ECF No. 58.)

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

October 30, 2019
Columbia, South Carolina

---

⁷ However, at the same time, Defendant will be able to argue to the jury that rental costs do not result in the proper amount of calculated damages for loss of use.

⁸ The court observes that this decision does not contemplate the argument accepted by some courts in states that require mitigation of damages that "a party cannot recover the reasonable rental value of substitute property if the party does not rent such property because it is able to use its own property to mitigate damages." *MCI Commc'ns, Inc. v. Maverick Cutting & Breaking LLC*, 374 F. Supp. 3d 789, 803–04 (D. Minn. 2019).